# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### CIVIL ACTION NO.: 5:26-CV-00552

KATRON EVANS,

        Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

        Defendant.

**INDEX OF EXHIBITS TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

| Exhibit | Description |
|---|---|
| 1 | Declaration of KaTron Evans |
| 2 | Declaration of Kevin Hansen |
| 3 | Declaration of Coach Dave Doeren |
| 4 | Declaration of Coach Elisha Shaw |
| 5 | Declaration of David Berri |
| 6 | Declaration of Nicole Gould |
| 7 | Declaration of Brennan Kennedy |
| 8 | Declaration of Sophie Clody |

Respectfully submitted this 7th day of August, 2026.

/s/ Tricia Wilson Magee
Tricia Wilson Magee, N.C. Bar No.: 31875
Shumaker, Loop & Kendrick, LLP
101 S. Tryon St., Suite 2200
Charlotte, NC 28280-0002
Telephone: 704-945-2961
tmagee@shumaker.com

# EXHIBIT 1

## Declaration of KaTron Evans

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CIVIL ACTION NO.:**

KATRON EVANS,

        Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

        Defendant.

**DECLARATION OF KATRON EVANS**

I, KaTron Evans, declare, under penalty of perjury as follows:

1. I am over eighteen (18) years of age and competent to testify regarding the matters stated herein. I am the Plaintiff in this action. I make this declaration based on my personal knowledge. Throughout my collegiate athletic career, I have been enrolled as a student-athlete at NCAA member institutions – Jackson State University, the University of North Carolina at Charlotte, Marshall University, and North Carolina State University – each of which required me to comply with, and represented to me that it would administer my eligibility in accordance with, the NCAA's Constitution and Bylaws.

**A.**     **Personal Background and Upbringing**

2. I was born and raised in Norfolk, Virginia. I grew up in a household with my mother, my great-aunt, and my grandmother. My mother raised me largely on her own, and she has always been my primary support and confidant.

3. My cousin, whom I will refer to as "Tay-Tay," functioned as an older sister to me throughout my childhood and adolescence. Tay-Tay was approximately three years older than me

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

and lived minutes from my home in Norfolk. We spoke four to five times per week by FaceTime or in person. Because my mother does not drive and has never had a driver's license, Tay-Tay drove me to and from football practice and other activities. She also sent me money and care packages when I was away at school. No one in my immediate family has a driver's license.

4.      I started playing football at approximately age seven. I played through about the fifth grade, when a weight limit pushed me out of my age group, and I switched to basketball for about a year or two. I resumed playing both football and basketball in middle school.

5.      I attended Granby High School in Norfolk, Virginia, for my freshman and sophomore years, playing defensive tackle. I received a scholarship offer from Virginia Tech during my freshman year. My team went winless during my sophomore year, and I was recruited by St. Frances Academy in Baltimore, Maryland – a private school with a boarding-school-like program run by Coach Biff Poggi, where players lived together in a large house, approximately three to four players per room. I transferred to St. Frances for my junior and senior years of high school.

6.      At St. Frances, I helped the team to an 11-1 record and a No. 4 national ranking (MaxPreps) in 2019, as part of a defense that allowed only 4.8 points per game. I did not play during the 2020 season because the Maryland high school football season was canceled due to the COVID-19 pandemic. I then tore my labrum during my senior year and did not play that season either. I was a consensus four-star recruit, ranked in the ESPN 300, ranked No. 4 in Maryland and No. 10 nationally among defensive tackles by Rivals, and No. 7 in Maryland and No. 13 nationally among defensive tackles by 247Sports. I received scholarship offers from thirty-nine schools.

7. I originally committed to the University of Tennessee, but I decommitted after the coaching staff was fired amid a recruiting scandal. I then committed to Jackson State University to play for Coach Deion Sanders.

**B.  Academic and Athletic Career Timeline**

8. I enrolled full-time at Jackson State University in the fall of 2021, which began my five-year eligibility clock under NCAA rules. I played seven games during my freshman season (fall 2021), recording fourteen tackles, 2.5 tackles for loss, and 1.5 sacks. I started multiple games.

9. During the 2022 season at Jackson State, after Name, Image, and Likeness ("NIL") arrangements arrived at the program, other players who were being paid were prioritized over me and I was pushed to the back of the depth chart. I played in only one game that season, which preserved my redshirt year under the NCAA's four-game rule.

10. When I left Jackson State, I was also considering transferring to the University of Memphis or Michigan State University, both of which had recruited me. In December 2022, I instead transferred to the University of North Carolina at Charlotte ("Charlotte") to reunite with my former high school head coach, Biff Poggi, who had become Charlotte's head football coach and had brought my high school position coach onto his staff. I enrolled at Charlotte for the spring 2023 semester. As described in Section D below, my GPA reset to zero upon that transfer, which contributed to the academic eligibility issues I experienced that year.

11. During the spring 2023 semester, as described in Section C below, I experienced a series of devastating personal losses and family hardships that caused me to struggle with my mental health and to fall into an academic tailspin. Despite my efforts to recover over the following summer, I fell short of the NCAA's academic eligibility requirements and was declared

academically ineligible for the fall 2023 football season. I describe the academic details of that period in Section D below.

12.     After I was declared ineligible, Charlotte's head coach told me it was "best" that I transfer, and Charlotte cut my scholarship. Because my GPA was too low to transfer to another Division I program, I had no real choice but to remain at Charlotte. I continued taking classes at Charlotte without a scholarship. My GPA recovered enough by the end of the fall 2023 semester, and Charlotte reversed course and offered to reinstate my scholarship. I accepted because I had no viable alternative.

13.     I played the 2024 season at Charlotte, appearing in all twelve games and recording eight tackles, 1.5 tackles for loss, and one fumble recovery returned twenty-two yards for a touchdown against Florida Atlantic University. Coach Poggi was fired mid-season in 2024, with approximately three games remaining. The new head coach asked me to stay, but I wanted a fresh start.

14.     I transferred to Marshall University for the 2025 season, seeking a fresh start closer to home. I played eleven games at Marshall, recording twelve tackles and 1.5 tackles for loss. I earned my Bachelor's degree from Marshall in December 2025, the same year my grandmother died, and was named a team captain. At Charlotte and Marshall combined, I appeared in twenty-three games, recording twenty combined tackles, three tackles for loss, and one fumble recovery returned for a touchdown.

15.     In January 2026, I transferred to North Carolina State University ("NC State") after learning from a coaching staff member at Marshall that I might have a case for an additional year of eligibility because I had only three actual playing seasons (2021, 2024, and 2025) – having redshirted in 2022 and been academically ineligible in 2023. Marshall's head coach, who had

previously served as NC State's defensive coordinator, recommended that I transfer to NC State. I also chose NC State in part because it is approximately two and a half hours from my mother's home in Norfolk, Virginia, compared to seven and a half hours from Marshall, which would allow my mother – who does not drive – to attend my games for the first time in my college career.

## C. Personal Hardship

16. I now describe these hardships in more detail. The first of these tragedies occurred while I was still enrolled at Jackson State, which is in Mississippi. On October 15, 2022, my cousin Tay-Tay was murdered. She was shot through the front windshield of a car. The assailants were targeting the boyfriend of my other cousin, who was also in the vehicle. Four people were in the car – my cousin, her sister, and both sisters' boyfriends. Three of the four, including Tay-Tay, were shot; Tay-Tay was the only one who died that night. The killers were known to our neighborhood but one has ever been prosecuted for her murder.

17. I learned about Tay-Tay's murder through social media approximately a day after it happened because my family did not want to worry me while I was away at school in Mississippi. My coaches allowed me to go home for the funeral, which was held on October 25, 2022. It was an open-casket service, and I could see the bullet wounds on her body. I was home for only about forty-eight hours – I arrived the night before the funeral and left the next morning.

18. Five days after Tay-Tay's murder, on October 20, 2022, the boyfriend of Tay-Tay's sister – who was the actual intended target in the October 15 shooting and who was also my close friend – was himself murdered. His funeral was heavily guarded by police due to ongoing neighborhood conflict and the risk of retaliation.

19. Tay-Tay was like a big sister to me, and I had relied on her for emotional and financial support, as described in Section A above, for as long as I could remember. Losing her in

such a violent and sudden way, only months before I transferred to Charlotte, devastated me and left a void I did not know how to process.

20. Less than six months later, on March 23, 2023, during my first semester at Charlotte, my great-aunt died suddenly. She had been living with my family in our home. My mother told me it was heart-related, tied to longstanding substance abuse. This was the third death of a person close to me within approximately five months.

21. Around the same time in spring 2023, my mother faced eviction proceedings. She had failed to recertify a housing subsidy. I began sending home whatever I could from my monthly stipend at Charlotte, which was approximately $1,600 per month. After paying my own rent and expenses, I sent approximately $600 per month to my mother for several weeks while she resolved the situation in court. I was constantly worried about whether my mother and sister would have a place to live.

22. The cumulative weight of these events – the murders of Tay-Tay and my close friend, my great-aunt's death, and my mother's potential homelessness – destroyed my ability to function academically during the spring 2023 semester. I had all in-person classes, but I often could not bring myself to attend or complete coursework. I did not have the mental capacity to focus. I was consumed by intrusive negative thoughts. I felt a constant disconnect between my own relative comfort at school – knowing where my next meal was coming from – and the knowledge that my mother and sister were struggling at home. School fell by the wayside.

23. In August 2023, my close friend and former youth-football teammate, Tajh Boyd, who was a player at Liberty University, died by suicide. Tajh and I had played youth football together since we were approximately thirteen years old. I believe he was dealing with feelings similar to mine – a sense of letting everyone down. I disclosed to my mother around this time that

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

I had previously experienced similar thoughts myself, going back to 2020 when I could not play football. The feeling was connected to believing I was letting my family and myself down.

24.     I told one coach at Charlotte whom I trusted generally about my great-aunt's death and the stress of my mother's eviction, I did not receive formal mental health counseling while at Charlotte, and no one at Charlotte guided me toward mental health resources despite my obvious academic decline.

25.     In April 2025, during my time at Marshall, my grandmother died. She had lived with my family and helped raise me. She was found unresponsive at home after a clogged artery caused her to become brain dead, and my family ultimately made the decision to withdraw life support. Before she passed, my coaches arranged for my flight home so that I could see her in the hospital, and my position coach personally drove me to and from her funeral about a week or two later. I graduated from Marshall that same December, notwithstanding this loss, because of the support I received. The support I received at Marshall stood in stark contrast to the lack of support I received at Charlotte during my time of crisis in 2023.

**D.     Academic Eligibility Timeline and Waiver History**

26.     My five-year eligibility clock began when I enrolled full-time at Jackson State in the fall of 2021. I maintained approximately a 2.3 to 2.4 cumulative GPA over three semesters at Jackson State. I am informed that under the NCAA's own governing documents, member institutions such as Jackson State, Charlotte, Marshall, and NC State are required to administer student-athlete eligibility, including waiver requests, by evaluating the totality of the circumstances surrounding each case and reaching an outcome that considers the well-being of the student-athlete while maintaining fairness. When I transferred to Charlotte for the spring 2023

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

semester, my GPA from Jackson State did not transfer and instead reset to zero because only thirty-four of my forty-nine earned credit hours transferred.

27.     I enrolled in sixteen credit hours for my first semester at Charlotte (spring 2023), which was later reduced to twelve to preserve my full-time enrollment status needed to practice. One of my courses, Introduction to Sociology, could have been converted to a pass/fail grading basis before a campus deadline, but that option was not utilized by Charlotte's academic support staff on my behalf. The course also could not be dropped without causing me to fall below full-time status, which would have made me ineligible to practice. I ended the spring 2023 semester with two D's, one F, and one B – a 1.25 semester GPA.

28.     I took nine additional credit hours during the summer of 2023 in an attempt to recover my GPA. I failed one course and dropped another, ending the summer with a 1.57 cumulative GPA. The NCAA requires a minimum progress-toward-degree GPA, which was 1.9 for me during the 2023 academic year at Charlotte, and I fell short of that threshold. Charlotte declared me academically ineligible for the fall 2023 football season. Nobody at Charlotte suggested to be that I could apply for a waiver of the progress-toward-degree requirement given my circumstances in late 2022 and spring 2023. I did not play a single game during the 2023-24 academic year.

29.     I ultimately recovered from this setback: I regained my academic eligibility, played the full 2024 season at Charlotte, transferred to Marshall for the 2025 season, earned my bachelor's degree, and was named team captain, all as described in Section B above. I did everything within my control to recover from that academic and personal crisis, notwithstanding that Charlotte's own compliance office has since acknowledged it did not exhaust the options available to help me at the time.

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

30. After I enrolled at NC State in January 2026, NC State's compliance staff submitted an extension-of-eligibility waiver to the NCAA on my behalf on March 10, 2026, on an urgent basis given that my five-year eligibility window was expiring. The NCAA denied the waiver on March 30, 2026. NC State submitted a request for staff reconsideration on April 9, 2026, clarifying that the GPA deficiency was an NCAA-wide progress-toward-degree bylaw requirement and not merely a Charlotte institutional rule. The NCAA denied reconsideration on May 20, 2026 – approximately six weeks later, with no interim communication despite repeated follow-up by NC State's compliance staff.

31. NC State submitted a formal appeal on June 12, 2026. I understand that under the NCAA's own stated protocol, a decision should have been issued within approximately three weeks – by about June 17 to June 24, 2026. Instead, the NCAA Appeals Committee did not issue its decision until July 24, 2026 – approximately one month past its own timeline, and the day before NC State's preseason training camp was scheduled to begin on July 29, 2026.

32. The NCAA Appeals Committee denied my appeal on July 24, 2026 (Case ID 1262478). The Committee's stated rationale was that I had not been denied at least two participation opportunities beyond my control or the institution's control. The Committee treated the 2021-22, 2024-25, and fall 2025 semesters as participation opportunities, and treated my 2023-24 academic ineligibility as a circumstance within my or Charlotte's control. The written decision also stated that the Committee was "unable to identify any extraordinary circumstances" to warrant granting the waiver, a standard I am informed does not appear in the text of the applicable bylaw. Earlier in the process, the NCAA staff had also rejected the mental-health hardship component of my waiver on the ground that Tay-Tay and my great-aunt were merely "cousins" rather than qualifying immediate family members – even though my great-aunt lived in my mother's

household as part of my immediate family, and Tay-Tay had functioned as an older sister to me my entire life. In my understanding, at no point did the NCAA weigh these circumstances together as a whole. Instead, it addressed each piece of my case in isolation – the family deaths, my academic performance, and Charlotte's own acknowledged academic mismanagement – without ever considering how these circumstances combined to deprive me of a genuine opportunity to compete in four seasons. The Committee's July 24, 2026, decision did not meaningfully engage with the new evidence and comparator cases NC State submitted on appeal, including NCAA Case Nos. 1169049, 1168980, and 1247023, which I am informed and believe involved circumstances comparable to or less compelling than mine – including a cousin's shooting, a grandmother's death, and housing instability – and in which the NCAA granted the requested extension of eligibility. I am informed and believe that the NCAA has granted eligibility relief to other athletes with materially similar or less compelling circumstances than mine, while denying my waiver and appeal notwithstanding the cumulative severity of what I experienced.

### E. Role, Standing, and Importance on the Team

33. I am a defensive lineman who plays the nose guard position. I weigh approximately 335 to 340 pounds. I am a starter on NC State's defense. I have been practicing, lifting weights, and training with the team throughout the spring and summer of 2026, through July 24, 2026. Since arriving at NC State, I have lost seventeen pounds and am in the best physical condition of my career.

34. Since July 24, 2026, the date the NCAA denied my appeal, I have been reclassified to "alumni player" status. Under this designation, I have only limited access to the football program: I may observe practice, use the weight room when current players are not present, and receive medical treatment from athletic trainers. However, I cannot be coached, cannot receive a

strength and conditioning program, cannot join team meetings or team meals, and cannot receive any benefit the program pays for. I estimate I currently have access to approximately twenty-five percent of what a rostered player would have.

35.     I have a Name, Image, and Likeness ("NIL") arrangement at NC State. My NIL compensation was several thousands of dollars per month, and was scheduled to increase by fifty percent monthly beginning in July 2026. The structure provides that approximately one-third of my annual NIL package is paid during the off-season and approximately two-thirds during the football season. I rely on this income to send money home to my mother and sister, consistent with my practice throughout my college career of sending my mother whatever I could after paying my own expenses.

36.     I have taken on a mentorship and "big brother" role with the younger players in the defensive line room at NC State. I earned team captaincy at Marshall and carry the same leadership approach at NC State. I am the strongest player on NC State's 120-man roster. Behind me on the depth chart at nose guard is a redshirt freshman.

### F.     Irreparable Harm

37.     NC State's first game of the 2026 season is a "week zero" game at the University of Virginia on or about August 29, 2026. Every day that I am excluded from practice is a repetition I am not getting to prepare for that game and for my final season of college football. As a 340-pound nose guard, I am double-teamed on nearly every play – meaning two opposing offensive linemen, each weighing approximately 300 pounds, are blocking me simultaneously on every snap. Proper technique and muscle memory in that violent environment are built exclusively through practice repetitions. Without those repetitions, I face a serious risk of physical injury when I return to competition.

38. Beyond the physical risk, I am losing the team camaraderie, coaching, and daily structure that have been my primary support system throughout my college career. Football has been my primary outlet for coping with hardship. As described in Section C above, I have previously struggled with difficult thoughts during periods when I could not play football or felt disconnected from my team. Being separated from my teammates and coaches now—the people who have become my daily support network – is causing me significant mental and emotional distress, and I am concerned about a return to that same sense of isolation.

39. I am also losing NIL income that my family depends on. My mother and sister rely on the money I send home. The loss of my NIL compensation, particularly the increased payments that were scheduled to begin in July 2026, is causing immediate financial hardship to my family.

40. This year represents an essential opportunity to be evaluated for a professional football career. If I cannot play this season, I would have to sit out an entire year and enter the professional evaluation process as a player who did not compete in his final year, which would gravely diminish my NFL prospects. A strong final season at NC State could be the difference between a professional career – generational, life-changing money for someone from my background – and having that opportunity foreclosed entirely. This opportunity, once lost, cannot be recovered.

41. The uncertainty about my future is taking a significant mental toll. I went from being a full member of the team just days ago to sitting apart, unable to prepare for the season, wondering what will happen. Given my history, the losses I have endured, the times I have struggled mentally, and the fact that football and my team have been my primary sources of stability and purpose, being cut off from that support system is causing me real and ongoing harm that no amount of money can compensate.

Docusign Envelope ID: 75B6E0C0-FFC6-83A5-807F-B252301D80DF

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8/5/2026___ .

DocuSigned by:

*KaTron Evans*

50A097ED5AF04D9...

KaTron Evans

# CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **DECLARATION** was served by depositing a true and correct copy thereof in an official depository of the U.S. Mail, postage prepaid, and was also served via email, addressed to the following:

National Collegiate Athletic Association
c/o Jared Tidemann, Director of Legal Affairs
and Senior Counsel of Government and Sports Administration
700 W. Washington Street
Indianapolis, IN 46206-6222
jtidemann@ncaa.org

This 7th day of August, 2026.

/s/ Tricia Wilson Magee
Tricia Wilson Magee